UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHARLES RINGEL,                          Case No. 1:12-cv-521

      Plaintiff,                               Spiegel, J.
                                           Bowman, M.J.

vs.

CAROLYN W. COLVIN, acting
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Charles Ringel filed this Social Security appeal in order to challenge the Defendant's determination that he is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED and REMANDED because it is not supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

Plaintiff filed an application for Disability Insurance Benefits ("DIB") benefits in March 2008, alleging a disability onset date of September 4, 2005 due to physical and mental impairments. After Plaintiff's application was denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). An evidentiary hearing was held in March 2010, at which Plaintiff was represented by counsel. At the hearing, ALJ Christopher McNeil heard testimony from Plaintiff and an impartial vocational expert, Robert Breslin. On September 8, 2010, the ALJ denied Plaintiff's application in a

written decision. (Tr. 11-22). Plaintiff now seeks review of the ALJ's decision.

The record reflects that Plaintiff was 47 years old at the time of the ALJ's decision and was a high school graduate. He has past relevant work as a janitor and head janitor.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease; psychotic disorder; depressive disorder; and anxiety disorder." (Tr. 13). The ALJ determined that none of Plaintiff's impairments alone, or in combination, met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* Rather, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work, described as follows:

> He can occasionally lift twenty pounds, ten pounds frequently, and push/pull up to ten pounds with hand or foot controls. In an eight-hour workday he is able to sit, stand, or walk six hours each. He cannot use ladders, ropes or scaffolds. He can balance, stoop, kneel, crouch, crawl, and climb ramps or stairs on a frequent basis. Due to his mental limitations, he is able to perform only simple and detailed work with no more than occasional contact with supervisors and co-workers and no interaction with the general public.

(Tr. 15).

Based upon the record as a whole, including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while Plaintiff is unable to perform his past relevant work, other jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 20, 21). Such jobs include, inspector (sedentary and light), packager, and assembler. (Tr. 21). The ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, and not entitled to DIB. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's

decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) failing to appropriately weigh the medical opinions in the record; and (2) improperly assessing Plaintiff's credibility. Upon close inspection, the undersigned finds that Plaintiff's assignments of error are well-taken.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists

3

in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve

4

months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is not Substantially Supported and should be Reversed**

*1. Relevant Evidence and ALJ's Decision[1]*

Plaintiff has treated at Michael Farrell, Ph.D., and Associates with various physicians since August 4, 2005, including Jennifer J. Stoeckel, Ph.D., and Cynthia J. Richards, M.D. (Tr. 273-277, 287-300, 345-367, 375-384, 396-418).

Dr. Stoeckel diagnosed Plaintiff with Psychotic Disorder, NOS, and Anxiety Disorder, NOS. *Id.* Dr. Stoeckel completed a "Vocational Assessment" in October 2009. (Tr. 52). Dr. Stoeckel reported that her office had been treating Plaintiff's psychological problems since 2005. (Tr. 345–46). She opined that Plaintiff was "seriously limited by his psychological allowances," which included paranoia, anxiety, limited motivation, and intermittent hallucinations. (Tr. 351). Dr. Stoeckel opined that Plaintiff was "permanently and totally disabled from any type of competitive employment" because there were "no jobs that could accommodate his psychological restrictions." (Tr. 351).

Mary Buban, Psy.D., an impartial expert, testified at the administrative hearing and also provided a medical assessment of Plaintiff's mental impairments. Dr. Buban noted that Plaintiff's mental health complaints were "vague and intermittent." Dr. Buban also found that Plaintiff "functions independently" and that "the overall record supports heightened anxiety and mistrust of employer and [Bureau of Workers' Compensation] process." (Tr. 435). Dr.

---

[1] Plaintiff is only challenging the ALJ's evaluation of his mental impairments. As such, the undersigned will not undertake a discussion of the record relating to his physical impairments.

Buban opined that Plaintiff was capable of performing "simple and detailed work" that involved "occasional contact with supervisors and coworkers," "no contact with the public," and limited "fast-paced production quotas." (Tr. 436).

In formulating Plaintiff's mental RFC, the ALJ gave "some weight" to Dr. Stoeckel's findings. (Tr. 20). In so concluding, the ALJ determined that Dr. Stoeckel's findings were not "supported by the medical record" and she "is not shown to be familiar with the Social Security Administration regulations." (Tr. 20). The ALJ gave significant weight to the testimony of Dr. Buban, the medical expert that testified at the administrative hearing. He found that Dr. Buban's findings were based upon a superior longitudinal record of objective medical evidence of record, as well as Plaintiff's testimony. The ALJ also noted that Dr. Buban was know to be familiar with Social Security Regulations.

*2. Evaluation of the Opinion Evidence*

Plaintiff's first assignment of error asserts that the ALJ erred in failing to give controlling weight to the opinions of Dr. Stoeckel, Plaintiff's treating psychologist. The undersigned agrees.

In evaluating the opinion evidence the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

It is well established that the "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.' " *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). A finding by the ALJ that a treating physician's opinion is not consistent with the other substantial evidence in the case record "means only that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected*." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 (emphasis added). "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); 416.927(d)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(3)-(6), 416.927(d)(3)-(6); *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004).

The ALJ must satisfy the clear procedural requirement of giving "good reasons" for the weight accorded to a treating physician's opinion: "[A] decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' Social Security Ruling 96-2p, 1996 WL

374188, at *5 (1996)." *Wilson,* 378 F.3d at 544. The specific reasons requirement exists not only to enable claimants to understand the disposition of their cases, but to ensure "that the ALJ applies the treating physician rule and permit[] meaningful review of the ALJ's application of the rule." *Id.* Only where a treating doctor's opinion "is so patently deficient that the Commissioner could not possibly credit it" will the ALJ's failure to observe the requirements for assessing weight to a treating physician not warrant a reversal. *Id.* at 547. Here, the ALJ's decision does not reflect an analysis of these factors.

As detailed above, in formulating Plaintiff's mental RFC the ALJ gave "significant weight to the assessment of the medical expert, Dr. Buban. Notably, Dr. Buban determined that Plaintiff's psychotic problems were vague and intermittent, noting only occasional complaints of "seeing spots" and hearing voices; as well as intermittent complains of depression and anxiety. Dr. Buban also determined that the record did not contain any objective evidence of Plaintiff's psychiatric problem and included notations of his subjective complaints. In response to interrogatories submitted to Dr. Buban after the administrative hearing, Dr. Buban opined that Plaintiff was able to function independently and that Dr. Stoeckel's rating of marked limitations in activities of daily living was contradicted by her own evaluation of Plaintiff's functional limitations in October 2009. Such findings, however, are not substantially supported by the evidence of record.

Namely, Dr. Buban (and the ALJ) failed to properly characterize Dr. Stoeckel's treatment notes, failed to properly consider Dr. Stoeckel's longitudinal treatment history of Plaintiff, as well as her objective findings.[2]

---

[2] Objective medical evidence consists of medical signs and laboratory findings as defined in 20 C.F.R. § 404.1528(b) and (c). *See* 20 C.F.R. § 404.1512(b)(1). "Signs" are defined as

8

Dr. Stoeckel, a psychologist, and Darrin Elkins, PCC, a therapist, (both members of the same practice) treated Plaintiff on a regular and consistent basis (usually every two weeks) since 2005. (Tr. 287-300 (4-17-07 to 5-13-08), 345-367 (5-5-08 to 1-11-10), 396-418 (8-15-05 to 7-10-07)). Contrary to Dr. Buban's opinion, Dr. Stoeckel's treatment notes contains ample evidence and clinical findings relating to Plaintiff's mental impairments. These include clinical findings such as anxious or nervous mood, depressed or sad mood, nervous laughter, paranoia, hallucinations, somatic focus, anhedonia, blunted/flat affect, poor concentration, limited insight, and illogical thought process. (Tr. 273, 338-41 345-367, 368-74, 369-418).

Furthermore, contrary to the findings of Dr. Buban and the ALJ, the fact that Dr. Stoeckel's opinions were based on Plaintiff's self-reports does not provide an adequate basis to reject such findings. Notably, the Sixth Circuit Court of Appeals, citing *Poulin v. Bowen*, 817 F.2d 865 (D.C. Cir.1987), stated that:

> A psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment ... consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine.... In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices [sic] in order to obtain objective clinical manifestations of medical illness.... When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial

---

"anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1528(b).

documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121, (6th Cir.1989). In *Blankenship*, the Sixth Circuit concluded that no cause existed to question the diagnosis of a psychiatrist made after only one interview and where no psychological testing had been conducted and even though the doctor noted the need for a more accurate history. *Blankenship*, 874 F.2d at 1121. Thus, interviews are clearly an acceptable diagnostic technique in the area of mental impairments and Dr. Stoeckel could rely upon the subjective complaints elicited during her treatment sessions with Plaintiff in formulating Plaintiff's functional restrictions. See *Warford v. Astrue*, No. 09-52, WL 3190756, at *6 (E.D .Ky. Aug. 11, 2010) (finding interviews are an acceptable diagnostic technique in the area of mental impairments).

Moreover, it is clearly established law that the opinion of a non-treating "one-shot" consultative physician or of a medical advisor cannot constitute substantial evidence to overcome the properly supported opinion of a physician who has treated a claimant over a period of years. *See Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983). As detailed above, Dr. Stoeckel treated Plaintiff since 2005 and her findings were properly supported.

Furthermore, the ALJ improperly determined that Dr. Stoeckel's assessments were inconsistent with her treatment notes because both she and Plaintiff reported that Plaintiff was improving and felt "better." (Tr. 16, 19). As recently noted by the Sixth Circuit:

> Even if Dr. Hoffmann's use of the word "better" referred to Plaintiff's mood, this word did not provide the ALJ with substantial evidence from which to find that Plaintiff's mental impairment had subsided. The ALJ made no inquiry into the degree of improvement, or from what baseline Plaintiff had improved.

> Under the ALJ's logic, any improvement in one's mood, regardless of how small and from what level the individual improved, would defeat a claim of mental impairment. This cannot be so. By concluding that some unspecified improvement in Plaintiff's mood cured any anxiety or depression that Plaintiff was experiencing, "the ALJ impermissibly substitute[ed] his own judgment for that of a physician."  *McCain v. Dir., Office of Workers Comp. Programs*, 58 Fed.Appx. 184, 193 (6th Cir. 2003).  The ALJ's conclusion appears to be grounded in a myopic reading of the record combined with a flawed view of mental illness. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (noting that judges, including ALJs in social security cases, must resist the "temptation to play doctor").

*Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 494 (6th Cir. 2011).

Accordingly, in light of the foregoing, the undersigned finds that the ALJ's evaluation of the opinion evidence is not substantially supported. As detailed above, the ALJ failed to consider the length of treatment and supportability of Dr. Stoeckel's opinions and his reliance on Dr. Buban's assessment was also unreasonable. This matter should be remanded for further proceedings so that the ALJ can properly evaluate the medical evidence of record in accordance with agency regulations and controlling law.

    *2. ALJ's consideration of Plaintiff's Credibility*

Plaintiff's next assignment of error asserts that the ALJ improperly assessed Plaintiff's credibility. With respect to the evaluation of a claimants credibility, SSR 96-7p provides in part:

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

11

SSR 96-7p.

The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

Here, with respect to his mental impairments, the ALJ determined that Plaintiff's subjective complaints of disability were not credible because such complaints were inconsistent with his daily activities. Namely, despite Plaintiff's complaints of disabling mental impairments, the ALJ noted that Plaintiff performs some household chores, visits friends, watches television and plays cards. (Tr. 18). However, in making this finding, the ALJ erred by selectively relying on Plaintiff's testimony regarding his daily activities. *See Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir.1998) ("[A] person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity.") It is well recognized that a claimant's ability to perform limited and sporadic tasks does not

mean that he is capable of full-time employment. *See Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir.2004); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). The undersigned finds that Plaintiff's ability to engage in such daily activities does not establish *ipso facto* that he is able to engage in gainful activity 40 hours per week.

Furthermore, the ALJ's selective citations to plaintiff's reported daily activities do not fairly portray his mental abilities. Although the ALJ was not bound to accept plaintiff's statements about his mental limitations, he was obligated to take into account the medical evidence and treatment history. As noted above, the ALJ failed to properly consider Dr. Stoeckel's treatment notes and opinions. The ALJ failed to do so in this case and, consequently, Plaintiff's second assignment of error should also be sustained.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Faucher*, 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g).

2. On remand, the ALJ be instructed to: 1) properly assess and evaluate the opinion evidence; and 2) properly consider Plaintiff's credibility and subjective complaints, and provide a clear explanation for the conclusions reached therein.

3. As no further matters remain pending for the Court's review, this case be **CLOSED.**

                                                 *s/Stephanie K. Bowman*
                                                 Stephanie K. Bowman
                                                 United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHARLES RINGEL,

    Plaintiff,

vs.

CAROLYN W. COLVIN, acting
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:12-cv-521

Spiegel, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

15